IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

B. EDWARD BRYANT,

     Plaintiff,

        v.

DANA C. REESE,


     Defendant.

CIVIL ACTION FILE
NO. 1:19-CV-45-TWT

## OPINION AND ORDER

This is a Section 1983 action. It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 26]. For the reasons set forth below, the Court GRANTS the Defendant's Motion for Summary Judgment [Doc. 26].

## I.    Background

On February 22, 2017, the Defendant Dana C. Reese, a police officer with the DeKalb County Police Department, was working an approved part-time job at the Walmart located at 3850 Memorial Drive, Decatur, GA 30032. Def.'s SOMF, [Doc. 26], ¶ 1. During her patrol, Officer Reese observed the Plaintiff B. Edward Bryant carrying a rifle inside of the Walmart. *Id.* at ¶ 2. Before communicating with Bryant, Officer Reese learned from a Walmart employee that Walmart had issued a criminal trespass ban against Bryant. Reese Aff., [Doc. 26], ¶¶ 6-7. The Walmart employee had the criminal trespass document for Bryant in her hand. *Id.* at ¶¶ 7-8. As Bryant began walking out

of the store, Officer Reese stopped him by yelling "excuse me sir." Def.'s SOMF, at ¶ 2. It is disputed whether Bryant had completely exited the store or remained inside. *Id.* Officer Reese then asked for Bryant's identification. *Id.* at ¶ 5. Bryant refused to comply. *Id.* Officer Reese then asked for Bryant's identification a second time. *Id.* at ¶ 6. Bryant refused to comply. *Id.* Officer Reese then arrested him for criminal trespass, obstruction, and disorderly conduct. *Id.* at ¶ 6. After the arrest, Officer Reese escorted Bryant outside of the Walmart so she could receive help from other DeKalb County Police Officers. *Id.* at ¶ 7. Once other officers arrived, they removed Bryant's assault rifle and found his identification. *Id.* Bryant was placed in the back of Officer Reese's patrol car. *Id.* Officer Reese testifies that she subsequently learned that Bryant's criminal trespass ban had been lifted by Walmart a day before the subject incident. *Id.* The Defendant argues that Officer Reese found out the criminal trespass ban had been rescinded before she arrested Bryant. Pl.'s Response to SOMF, [Doc. 27-2], ¶ 4. Bryant was transported to the DeKalb County intake without any further incident. Def.'s SOMF, at ¶ 8.

On January 3, 2019, Bryant filed this action in DeKalb County Superior Court under 42 U.S.C. § 1983 alleging violations of Bryant's constitutional rights under the Fourth Amendment and Second Amendment. Specifically, Bryant alleges that Officer Reese violated his right to be free from an unreasonable search and seizure, lacked probable cause to arrest him, and violated his right to bear arms. On January 3, 2019, Officer Reese filed a Notice

2

of Removal pursuant to 28 U.S.C. §§ 1441 and 1446. On September 2, 2020,
Officer Reese moved for summary judgment.

## II.    Legal Standard

Summary judgment is appropriate only when the pleadings, depositions,
and affidavits submitted by the parties show no genuine issue of material fact
exists and that the movant is entitled to judgment as a matter of law. Fed. R.
Civ. P. 56(a). The court should view the evidence and any inferences that may
be drawn in the light most favorable to the nonmovant. *Adickes v. S.H. Kress
& Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must
first identify grounds to show the absence of a genuine issue of material fact.
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts
to the nonmovant, who must go beyond the pleadings and present affirmative
evidence to show that a genuine issue of material fact does exist. *Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence
supporting the opposing party's position will not suffice; there must be a
sufficient showing that the jury could reasonably find for that party." *Walker
v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## III.    Discussion

Bryant bases his Section 1983 claim against Officer Reese on (1) an
unreasonable seizure and a false arrest in violation of his Fourth Amendment
rights and (2) an infringement on Bryant's right to bear arms under the Second
Amendment. Officer Reese argues that she is entitled to summary judgment

for three reasons. First, to the extent that Bryant is filing this lawsuit against Officer Reese in her official capacity, Officer Reese argues that Bryant has failed to show that a DeKalb County practice, custom, or policy played a role in his alleged constitutional violation. The Court agrees.

"When an officer is sued under Section 1983 in his or her official capacity, the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.'" *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). "Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents." *Id.* To the extent that the Plaintiff seeks to bring a claim against DeKalb County pursuant to 42 U.S.C. § 1983, he must overcome the "strict limitations on municipal liability" which the United States Supreme Court has put in place. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). It is well settled that municipalities and local government units cannot be found liable under § 1983 under a respondeat superior or vicarious liability theory. *See Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691-94 (1978). "Instead, to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). A municipality may only be liable for the tortious acts of its employees if action

4

taken "pursuant to official municipal policy" results in a deprivation of a federally protected right. *Monell*, 436 U.S. at 691. The "'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986).

"'[O]fficial policy' often refers to formal rules or understandings – often but not always committed to writing – that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembuar*, 475 U.S. at 480-81. It includes actions of a policymaker that are representative of official government policy. *See Monell*, 436 U.S. at 694. Additionally, it includes situations where a policymaker's "failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). To establish municipality liability based on the conduct of its officials, the plaintiff "must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences." *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 407 (1997) (internal quotations omitted). "A showing of simple or even heightened negligence will not suffice." *Id.*

Here, the Plaintiff Bryant has not identified any official promulgated policy of DeKalb County that caused his alleged unlawful arrest. The record is devoid

5

of any evidence or allegations referencing any prior incidents involving the same alleged constitutional injury. Bryant did not allege in the Complaint that a policy, practice or custom of the DeKalb County Police Department caused his alleged constitutional violation. Thus, Defendant Officer Reese is entitled to summary judgment as a matter of law to the extent that the Plaintiff is suing the Defendant in her official capacity.

Next, to the extent that the Plaintiff is filing this lawsuit against the Defendant in her individual capacity, the Defendant argues she is entitled to qualified immunity because she relied on trustworthy information that the Plaintiff was criminally trespassing in the Walmart and possessed arguable probable cause to arrest him. The Court agrees. Qualified immunity protects police officers from suit in their individual capacities for discretionary actions performed in the course of their duties "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It serves the purpose of allowing "government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." *Durruthy v. Pastor*, 351 F.3d 1080, 1087 (11th Cir. 2003) (citation omitted). Under qualified immunity, "all but the plainly incompetent or one who is knowingly violating the federal law" are shielded from litigation. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Qualified immunity "does not offer protection if an official knew or

6

reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." *Holmes v. Kucynda*, 321 F.3d 1069, 1077 (11th Cir. 2003) (quoting *Harlow*, 457 U.S. at 815) (internal quotations omitted).

Officer Reese, who asserts qualified immunity, must first establish that she was acting within the scope of her discretionary authority. Once she shows that, the burden shifts to the Plaintiff to demonstrate that qualified immunity is inappropriate. *See Lee*, 284 F.3d at 1194. Overcoming the official's qualified-immunity defense requires a plaintiff to establish both that the officer's conduct violated a constitutionally protected right and that the right was clearly established at the time of the misconduct. *See Pearson*, 555 U.S. at 232; *Grider v. City of Auburn*, 618 F.3d 1240, 1254 (11th Cir. 2010). Here, it is undisputed that Officer Reese was acting within the scope of her discretionary authority as a DeKalb County Police Officer at the time of the incident.

The Plaintiff now has the burden to show that Officer Reese violated the Plaintiff's constitutional rights when she arrested him and that those rights were clearly established at the time of the arrest. Where an officer orders the arrest of an individual, he may be liable for a Fourth Amendment violation. *See Jordan v. Mosley*, 487 F.3d 1350, 1354 (11th Cir. 2007). The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. An arrest is a seizure, and the Court assesses the

reasonableness of an arrest by the presence of probable cause for the arrest. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007). By now, it is well established that "[a] warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996). But where probable cause supports an arrest, it bars a Section 1983 action for false arrest. *Id*.

Probable cause to arrest exists if "the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing an offense." *Id*. If an officer lacked probable cause to arrest, the Court must consider whether *arguable* probable cause supported the arrest at the time. *See Case v. Eslinger*, 555 F.3d 1317, 1326-27 (11th Cir. 2009). If so, the officer is still entitled to qualified immunity, even in the absence of actual probable cause. *Id*. As the Supreme Court has explained, "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and . . . in such cases those officials . . . should not be held personally liable." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

An officer has arguable probable cause to arrest where reasonable officers in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed to arrest. *See Case*, 555 F.3d at 1326-27. To determine whether an officer had arguable probable

8

cause, we ask "whether the officer's actions are objectively reasonable . . . regardless of the officer's underlying intent or motivation." *Lee*, 284 F.3d at 1195 (internal quotations omitted). This standard "does not shield officers who unreasonably conclude that probable cause exists." *See Skop*, 485 F.3d at 1137. Where an officer arrests without even arguable probable cause, the officer violates the arrestee's clearly established Fourth Amendment right to be free from unreasonable seizures. *See Case*, 555 F.3d at 1327.

In evaluating whether arguable probable cause supported an arrest, the Court applies this objective reasonableness standard to the facts as they relate to the elements of the alleged crime for which the plaintiff was arrested. *See Skop*, 485 F.3d at 1137-38. Here, Officer Reese contends that she had probable cause to arrest the Plaintiff for: criminal trespass, obstruction, and disorderly conduct. If probable cause or arguable probable cause supported the arrest of Bryant for any of these three crimes, Officer Reese is entitled to qualified immunity.

The Court begins with criminal trespass. A person violates Georgia law if he "knowingly and maliciously interferes with the possession or use of the property of another person without consent of that person." O.C.G.A. § 16-7-21(a). Alternatively, a person commits this offense if he "knowingly and without authority" either "[e]nters upon the land or premises of another person . . . for an unlawful purpose," O.C.G.A. § 16-7-21(b)(1), or "[e]nters upon the land or premises of another person . . . after receiving, prior to such entry,

9

notice from the owner [or] rightful occupant . . . that such entry is forbidden . . . ." O.C.G.A. § 16-7-21(b)(2). An arresting officer for criminal trespass is not required to make a final legal determination of whether an arrestee has the authority to enter or remain on the premises. *See Patterson v. State*, 274 Ga. 713, 715 (2002) (finding probable cause for criminal trespass when the arrestee admitted to being on the premises, and an employee provided a statement of previous warning to leave); *Lewis v. Ritz Carlton Hotel Co.*, 310 Ga. App. 58, 61-62 (2011) (finding probable cause for criminal trespass when the arresting officer relied solely on statements provided by the hotel staff that the arrestee refused to leave, even though the arrestee had complied with the staff's request to return to his suite); *United Baptist Church, Inc. v. Holmes*, 232 Ga. App. 253, 257 (1998) (holding that the arresting police officer was not required to investigate whether a pastor was validly terminated and whether the pastor retained the right to return to church premises before arresting him for criminal trespass). The arresting officer only needs to have "reasonably trustworthy information about facts and circumstances sufficient for a prudent person to believe [that] the accused has committed an offense." *Patterson*, 274 Ga. at 715.

Here, Officer Reese was informed by a Walmart employee that Bryant was banned from Walmart. The Walmart employee showed Officer Reese the criminal trespass warning. Officer Reese then yelled out "excuse me sir" when she saw Bryant exiting the Walmart. Officer Reese began to investigate the

10

matter by requesting Bryant's identification twice. Bryant, who was still armed with a rifle, refused to provide his identification, and comply with Officer Reese's orders. Officer Reese then arrested Bryant for criminal trespass, obstruction, and disorderly conduct. After Bryant was placed in the back of Officer Reese's patrol car, Officer Reese claims she learned from a different Walmart employee that Bryant's criminal trespass was lifted one day prior to the subject incident. Bryant argues that Officer Reese was informed of this prior to arrest.

Officer Reese was permitted to detain Bryant to dispel her suspicion of Bryant's potential criminal activity and had an obligation to verify the information she received. *See Terry v. Ohio*, 392 U.S. 1, 30 (1968). The record shows that Officer Reese received information from the Walmart employee which included an official Walmart criminal trespass document for Bryant. At that point, Officer Reese had at least arguable probable cause to believe that Bryant had committed the offense for criminal trespassing. Probable cause exists for an arrest for violation of § 16-7-21 (b)(3) "if the arresting officer has knowledge and reasonably trustworthy information about facts and circumstances sufficient for a prudent person to believe the accused has committed an offense." *Patterson*, 274 Ga. at 715 (citing *Johnson v. State*, 258 Ga. 506 (1988)). Officer Reese investigated the matter by detaining Bryant and requested he provide his identification to resolve any ambiguity. After Bryant refused to comply, Officer Reese arrested Bryant for criminal trespass. As an

T:\ORDERS\19\Bryant\19cv45\msjbll\msjtwt.docx

arresting officer, Officer Reese was not required to prove every element of the crime as the validity of the arrest does not turn on the offense announced by the officer at the time of the arrest. *See Scarbrough v. Myles*, 245 F.3d 1299, 1302-03 (11th Cir. 2001).

Officer Reese had arguable probable cause to arrest Bryant for criminal trespass because she relied on trustworthy information from the initial Walmart employee. Even if Bryant could show that a constitutional violation occurred, Bryant has failed to show that Officer Reese violated any clearly established constitutional right. The Plaintiff has identified no decisions of the U.S. Supreme Court, Georgia Supreme Court, or the Eleventh Circuit Court of Appeals that would have put Officer Reese or any reasonable officer on notice that her actions toward Bryant would violate his legal rights under the specific circumstances at hand. Therefore, Bryant's Fourth Amendment claim against Officer Reese in her individual capacity is barred by qualified immunity.

And finally, Bryant's Second Amendment claim against Officer Reese in her individual capacity also fails because the Plaintiff does not allege facts to support a violation of the Second Amendment. Officer Reese did not detain or arrest Bryant for carrying an assault rifle in the store. Rather, the record shows that the Bryant was detained and arrested because Officer Reese reasonably believed that Bryant was committing criminal trespass and Bryant obstructed her from investigating this belief.

## IV.   Conclusion

12

For the reasons stated above, this Court GRANTS the Defendant's Motion for Summary Judgment [Doc. 26].

SO ORDERED, this 10 day of June, 2021.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

T:\ORDERS\19\Bryant\19cv45\msjbll\msjtwt.docx